IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAX A. JACKSON,

        Petitioner,

v.                                                                      CIV 99-1107 BB/KBM

JOE WILLIAMS,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

        Max Jackson filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 in this Court on September 29, 1999.  As such, the Antiterrorism and Effective Death Penalty Act of 1996 (effective April 24, 1996) applies.  Respondents' Answer concedes exhaustion, and I have reviewed the record and find each of Petitioner's claims has been exhausted.

        The matter is presently before me on Petitioner's July 10, 2000 "Motion To Hold Writ In Abeyance While Petitioner Exhault (sic) State Court Remendies (sic) As To Newly Discovered Evidence," where, alternatively, he requests that the Court dismiss his petition without prejudice. *Doc. 11.*  The State was served with the motion, and has not filed a response.  I find that holding the federal matter in abeyance is not appropriate.  However, Petitioner's alternative request that the original petition be dismissed without prejudice should be granted.

### The Newly Discovered Evidence And Claims

        Apparently Petitioner's conviction for drug trafficking was one of at least three cases that resulted from an undercover "buy/bust" sting operation.  He says that two of these companion cases were referred to another jurisdiction for prosecution because the defense attorney in one of

those cases had been elected to the district attorney's office.  Jackson asserts that Scot Key was the "elected district attorney prior to the prosecution of any of the cases from the sting operation." *Doc. 11*.

Apparently, Mr. Key also briefly represented Petitioner.  Jackson points to a discovery demand filed early in the proceedings against him[1] that was signed by Mr. Key on behalf of Gary C. Mitchell.  Mr. Key and Mr. Mitchell are listed as "attorneys" for "defendant" on this pleading, which bears the same caption and cause number as the Judgment in Jackson's case.  It appears, however, that Petitioner was "represented through out trial by Attorney Noel Orquiz . . . Todd Holmes . . . represented petitioner at sentencing. . . [and] Carolyn Glick . . . represented petitioner on direct appeal." *Answer, Exh. H, p. 3*.

Although not entirely clear, Jackson's new claim is that the "District Attorney in the neighboring jurisdiction declined prosecution the [other] two cases due to flagrant violation of standard operating procedure," by which he apparently means Mr. Key simultaneously represented the State and defendants.  As I read his motion, the claim Petitioner wants to present to the state courts is that his case should have been dismissed like the other two:  "Petitioner, in the name of fundamental fairness has been denied his constitutional right of due process as guranteed (sic) by the equal protection clause of the constitution when Scot Key, represented Petitioner and prosecuted Petitioner at the same time." *Doc. 11*.

Petitioner maintains that he just recently discovered this claim.  He began to suspect that he might have a new claim in March, 2000 when he was permitted to read a petition filed in state

---

[1] The record does not contain documents such as an indictment or complaint, but the Judgment contains information regarding presentence incarceration.  From that I gather criminal proceedings were apparently commenced against Jackson in early October 1996.  The discovery motion in question was filed October 24, 1996. *Answer, Exh. A*.

2

court by one of the defendants in one of the "companion" cases. He immediately contacted the state district court to "attempt to discover information . . . relating to the [discovery] motion." *Id.* Following two failed attempts to secure the document by writing the court, he finally obtained a copy through a family member apparently sometime between late May 2000 and when the instant motion was filed in July 2000. *Id.*

### The Proper Procedure With Mixed Petitions

The long-standing *Rose v. Lundy* rule, 455 U.S. 13, 17 (1925), continues in post-AEDPA cases: the proper procedure for mixed petitions is to have Petitioner elect whether he wants to abandon the unexhausted claim and, if not, to dismiss the entire petition without prejudice.[2] It is not appropriate to hold the federal matter in abeyance while Petitioner exhausts part of a mixed petition.[3] Petitioner recognizes this rule by alternatively asking for dismissal without prejudice.

Furthermore, no exceptions to the *Rose v. Lundy* rule apply in this case. Although this Court has the authority to deny unexhausted claims that are without merit, there is no basis for doing so on the record before me. *See Hoxsie v. Kerby,* 108 F. 3d 1239, 1242-43 (10th Cir.),

---

[2] The state courts must have had an opportunity to pass on the claim 'in light of a full record,' . . . and where the factual basis for a claim was not presented to the state courts, the claim is unexhausted. . . . Although 'bits of evidence' which were not before the state courts will not render a claim unexhausted, . . . where a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different posture, the state courts must be given an opportunity to consider the evidence.

*Jones v. Hess,* 681 F.2d 688, 694 (10th Cir. 1982) (citations omitted); *see also e.g., Granberry v. Greer,* 481 U.S. 129, 134 (1987); *Brown v. Shanks,* 185 F.3d 1122, 1123 (10th Cir. 1999).

[3] *See, e.g., Habteselassie v. Novak,* 209 F.3d 1208, 1212 n.6 (10th Cir. 2000) (noting that limiting the phrase "'properly filed' to apply only to filing requirements" allows the federal court to avoid one "unsatisfactory options" which is "holding the federal habeas petition in abeyance . . . it keeps a parallel federal case open for an indefinite period of time"); *see also Garza v. Gibson,* 1999 WL 1054679 (10th Cir. 11/22/99).

3

*cert denied,* 522 U.S. 844 (1997); 28 U.S.C. § 2254(b)(2).  Nothing indicates that further exhaustion would be futile or that comity/federalism interests would better be served by not having the state courts review the new claim first.  *See Harris v. Champion,* 48 F.3d 1127, 1113 & n.3 (10th Cir. 1995).  To the contrary, the New Mexico post-conviction proceedings rule does not limit the number of proceedings that can be filed and case law holds that claims based on newly discovered evidence are not barred from consideration by principles of *res judicata.  See e.g., Clark v. Tansy,* 118 N.M. 486, 491 (N.M. 1994); *State v. Gillihan,* 86 N.M. 439, 440 (N.M. 1974); *SCRA 5-802* (no express limitation on number of petitions or prohibition of successive petitions as in prior rule).

After exhausting Petitioner can refile a petition containing his original claims plus the newly-exhausted claim.  There is no imminent danger that his subsequent petition will be dismissed under one of AEDPA's procedural bars.  For example, the subsequent petition would not be classified as "successive."  *E.g., Slack v. McDaniel,* 120 S.Ct. 1595, 1605 (2000).  The tolling provisions under 28 U.S.C. § 2244(d)(2) post-conviction proceedings will apply to the new state proceedings, provided Jackson "properly files" by complying with any post-conviction "filing requirements" New Mexico may have.  *See Habteselassie,* 209 F.3d at 1210-1211.

While the original limitations period will also continue to apply, Petitioner does not appear to be in any danger of having his subsequent petition barred because he still had time remaining on his one-year statute when he filed his original petition.  If Jackson does not delay in filing in the state courts and thereafter in this Court, he should have no trouble doing within the time remaining on his one-year statute.[4]

---

[4] The denial of Jackson's petition for certiorari from direct appeal was entered August 24, 1998.  *New Mexico v. Jackson,* 125 N.M. 654 (N.M. 1998). Adding ninety days for the time he would have had to appeal to the Supreme Court of the United States, Petitioner's one-year statute

4

Wherefore,

**IT IS HEREBY RECOMMENDED** that unless Petitioner notifies the Court within the ten-day period allowed for objections (see below) that he wants to drop his unexhausted claim and proceed only with his exhausted claims, the District Judge dismiss the petition without prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

                                                              _____
                                                              UNITED STATES MAGISTRATE JUDGE

---

of limitations began to run on November 23, 1998.  *See, e.g., Habteselassie,* 209 F.3d at 1209. Had the one-year limitations period run without stopping, Petitioner would have had until November 22, 1999 to file his federal habeas corpus petition.  However, Petitioner also pursued state habeas corpus relief from June 11, 1999 to September 7, 1999, which tolled (or stopped the statute from running) for 88 days.  The statute started running again on September 8, 1999 because appeal time to the United States Supreme Court <u>does not</u> apply to state postconviction proceedings.  *E.g., Rhine v. Boone,* 182 F.3d 1153, 1155 (10th Cir. 1999).  Thus, when Petitioner filed in this Court on September 29, 1999, his entire one-year limitations period had not been used.  He had 54 days remaining from the original one-year period (the number of days between 9/29/99 and 11/22/99), plus the 88 days during which the statute was tolled for postconviction relief proceedings.

5